IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

BRIAN DAVID CAMPBELL and )
ELAINE PITTMAN )
 )
    v. ) NO. 3:10-0397
 )
CITY OF NASHVILLE )

TO: Honorable Todd J. Campbell, Chief District Judge

## R E P O R T   A N D   R E C O M E N D A T I O N

By Order entered May 6, 2010 (Docket Entry No. 3), this action was referred to the Magistrate Judge to enter a scheduling order, to dispose or recommend disposition of any pretrial motions under 28 U.S.C. §§ 636(b)(1)(A) and (B), and to conduct further proceedings, if necessary, under Rule 72(b) of the Federal Rules of Civil Procedure and the Local Rules of Court.

Presently pending before the Court is the Defendant's motion for summary judgment (Docket Entry No. 54), to which the Plaintiff has filed a response in opposition (Docket Entry Nos. 66-67). Also before the Court are the Defendant's reply (Docket Entry Nos. 72-73 and 77) and the Plaintiff's sur-response (Docket Entry Nos. 78-79). Set out below is the Court recommendation for disposition of the motion.

### I. BACKGROUND

On July 21, 2009, Brian David Campbell ("Campbell"), a resident of Nashville, Tennessee, received a citation from an officer with the Tennessee Wildlife Resources Agency for the offense

of fishing without a license.  See Attachments to Complaint (Docket Entry No. 1-1), at 8-9.  The citation set a court appearance for the offense on September 16, 2009.  Id.  Prior to this date, Campbell called the phone number listed on the back of the citation and had the hearing date reset to October 21, 2009.  On October 20, 2009, Campbell personally paid the fine of $171.50 for the offense and received a payment receipt from the Davidson County, Tennessee, General Sessions Court, Criminal Division.  Id. at 5.  However, despite Campbell's having paid the fine prior to the rescheduled court date, the Davidson County Criminal Court Clerk issued a capias for Campbell for his failure to appear at the October 21, 2009, court hearing and set a bond of $250.00.  See Docket Entry No. 53-2.

At approximately 8:50 p.m. on the evening of Wednesday, December 9, 2009, two police officers with the Metropolitan Police Department for Nashville and Davidson County appeared at Campbell's residence, which he shared with his wife, Elaine Pittman ("Pittman"), for the purpose of serving the capias.  Although Campbell explained to the officers that he had paid the fine and that it was a mistake, the officers informed him that they had a warrant for his arrest and took him into custody.  Campbell was arrested without incident and transported to the Davidson County Criminal Justice Center ("CJC") where he was processed into the facility.  Campbell appeared before a state judicial commissioner that evening but the commissioner did not release Campbell and set a hearing the next day.  Campbell spent the night at the CJC and was not released until approximately 12:00 p.m. the next day when his wife came to the CJC with the receipt of his payment of the fine, and the judge before whom he was to have his hearing directed that he be released.  The failure to appear charge was ultimately dismissed.

Campbell asserts that no one with whom he had contact at the CJC assisted him or provided him with any relief despite his explanation that he had paid the fine and that the warrant was a mistake. He alleges that he was kept in a cold cell during the night, was not fed for twelve hours, was not assisted in making a phone call, and was required to change into prison clothes. He contends that he suffered emotional distress because of the incident and had to withdraw from David Lipscomb University, where he was a student at the time, because of the emotional effects of the incident. He further contends that he becomes emotional when he sees police officers or police cars and that he is afraid to answer the door at his residence.

On April 19, 2010, Campbell and Pittman filed the instant action pro se and in forma pauperis against the City of Nashville seeking $100,000.00 in damages under 42 U.S.C. § 1983 for "wrongful arrest, civil rights violations, emotional distress, negligence, mistreatment while in custody of the city, money owed to Lipscomb University for early withdraw (sic), and time as a result of wrongful arrest." See Attachments to Complaint (Docket Entry No. 1-1), at 2. By Order entered August 31, 2010 (Docket Entry No. 34), the Court dismissed with prejudice the claims asserted by Pittman and dismissed without prejudice the state law claims asserted by Campbell. Plaintiff Campbell was directed to file a comprehensive amended complaint setting out all of his claims and allegations in a single pleading.

On August 17, 2010, Campbell filed his amended complaint. See Docket Entry No. 33. He alleges that his Fourth, Fifth, and Fourteenth Amendment rights were violated by the Metropolitan Government of Nashville and Davidson County ("Metro")[1] when he was: 1) deprived of his liberty

---

[1] Although the Plaintiff named the "City of Nashville" as the Defendant in his original complaint, he referred to the Defendant as the Metropolitan Government of Nashville and Davidson County in his amended complaint (Docket Entry No. 33), and the Court deems the Defendant to be

3

without due process of law; 2) deprived of his property without due process of law; 3) subjected to an unreasonable search and seizure; and 4) falsely imprisoned. See Docket Entry No. 33, at 1. He contends that Defendant Metro "violated these rights by wrongfully arresting and detaining me based on an erroneously issued warrant as a result of repeated unconstitutional policies, practices, lack of safeguards, and a failure to train and/or supervise their system of inputting data, even though the defendant was and is aware of the need for such remedies." Id. The Plaintiff demands a jury trial. The Defendant filed an answer (Docket Entry No. 39), and a scheduling order (Docket Entry No. 40) was entered allowing for a period of discovery in the action. There are no other motions pending in the action.

## II. MOTION FOR SUMMARY JUDGMENT

The Defendant asserts that summary judgment is warranted for several reasons. First, the Defendant contends that the Plaintiff's complaint fails in its entirety because the Plaintiff has no competent proof that a governmental custom, practice, or policy that violates federal law caused his alleged injuries. Second, the Defendant argues that judicial immunity applies to the Plaintiff's due process, unreasonable search and seizure, and false imprisonment claims based upon the issuance of the capias warrant and the actions of the judicial commissioner in setting the Plaintiff's conditions of release and, further, that the Plaintiff cannot state a claim based upon his arrest because the arresting officers reasonably relied on the Criminal Court Clerk's issuance of the capias warrant. The Defendant also argues that the Plaintiff's due process claims fail because he has not alleged that state remedies are inadequate. Finally, the Defendants contends that the Plaintiff's general assertion

---

the Metropolitan Government of Nashville and Davidson County.

4

that he was mistreated while he was in custody fails because the Davidson County Sheriff's Office staff did not act with deliberate indifference and did not intend to punish the Plaintiff. See Docket Entry No. 54, at 1.

In response, the Plaintiff disputes that there was probable cause for the issuance of the capias, contends that the arresting officer should have investigated his assertion that the capias was mistakenly issued, contends that he should have been released by the judicial commissioner, and argues that judicial immunity does not apply because he is not challenging judicial acts.

The Plaintiff also asserts that he has raised genuine issues of material fact regarding Metro's liability. He contends that there is a Metro policy that tolerates and exhibits deliberate indifference to the risk of violating citizens' constitutional rights through faulty oversight, training, and data entry, which can lead to innocent citizens being arrested and incarcerated. In support, he points to: 1) a 2010 internal audit of the Davidson County Traffic Violations Bureau showing irregularities and errors in processing of traffic citations, see Docket Entry No. 33-2; 2) a newspaper article about a television news investigation into the handling of parking tickets in the Davidson County General Sessions Court, see Docket Entry No. 66-1, at 3-5; 3) newspaper articles about two individuals who were arrested and confined on charges before they were released after information showed that they were not the criminal defendants being sought by law enforcement, see Docket Entry No. 66-1, at 6-9; and 4) reference to the case Milligan v. The United States of America, 3:07-1053, which was filed in this Court and in which Metro police officers and federal agents mistakenly arrested the wrong person. See Docket Entry No. 66, at 4-6.

5

Case 3:10-cv-00397   Document 93   Filed 01/25/12   Page 5 of 13 PageID #: 490

### III. STANDARD OF REVIEW

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Federal Rules of Civil Procedure. See also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A "genuine issue of material fact" is a fact which, if proven at trial, could lead a reasonable jury to return a verdict for the non-moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In considering whether summary judgment is appropriate, the Court must "look beyond the pleadings and assess the proof to determine whether there is a genuine need for trial." Sowards v. Loudon Cnty., 203 F.3d 426, 431 (6th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 179, 148 L.Ed.2d 123 (2000). In reviewing a motion for summary judgment, the Court must view the evidence and all inferences drawn from underlying facts "in the light most favorable to the party opposing the motion." See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., Ltd., 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); Gribcheck v. Runyon, 245 F.3d 547, 550 (6th Cir.), cert. denied, 534 U.S. 896, 122 S.Ct. 217, 151 L.Ed.2d 155 (2001).

The moving party has the burden of showing the absence of genuine factual disputes from which a reasonable jury could return a verdict for the non-moving party. Anderson, at 249-50. However, "[t]he moving party need not support its motion with evidence disproving the non-moving party's claim, but need only show that 'there is an absence of evidence to support the non-moving party's case.'" Hayes v. Equitable Energy Res. Co., 266 F.3d 560, 566 (6th Cir. 2001) (quoting Celotex Corp., 477 U.S. at 325).

"Once the moving party has presented evidence sufficient to support a motion for summary judgment, the nonmoving party is not entitled to trial merely on the basis of allegations; significant probative evidence must be presented to support the complaint." Goins v. Clorox Co., 926 F.2d 559, 561 (6th Cir. 1991). The party opposing the motion for summary judgment may not rely solely on the pleadings but must present evidence supporting the claims asserted by the party. Banks v. Wolfe Cnty. Bd. of Educ., 330 F.3d 888, 892 (6th Cir. 2003). Moreover, conclusory allegations, speculation, and unsubstantiated assertions are not evidence, and are not sufficient to defeat a well-supported motion for summary judgment. See Lujan v. National Wildlife Fed'n, 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). In other words, to defeat summary judgment, the party opposing the motion must present affirmative evidence to support his or her position; a mere "scintilla of evidence" is insufficient. Bell v. Ohio State Univ., 351 F.3d 240, 247 (6th Cir. 2003) (quoting Anderson, 477 U.S. at 252).

## IV. ANALYSIS

"The Constitution does not guarantee that only the guilty will be arrested." Baker v. McCollan, 443 U.S. 137, 145, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). As succinctly stated by the Fourth Circuit Court of Appeals in Thompson v. Prince William Cnty., 753 F.2d 363 (4th Cir. 1985):

> Not every mix-up in the issuance of an arrest warrant, even though it leads to the arrest of the wrong person with attendant inconvenience and humiliation, automatically constitutes a constitutional violation for which a remedy may be sought under 42 U.S.C. § 1983.

753 F.2d at 364. Although the Court agrees with the Plaintiff's underlying premise that what happened to him should not have happened, after review of the entire record before the Court, the Court finds that summary judgment should be granted to the Defendant in this lawsuit. Genuine

7

issues of material fact simply do not exist which require resolution at trial, and, based on the evidence that is before the Court, no reasonable jury could find in favor of the Plaintiff on his claims that his federal constitutional rights were violated.

To prove a claim under 42 U.S.C. § 1983, the Plaintiff must establish: (1) that he was deprived of a right secured by the Constitution or laws of the United States, and (2) that he was subjected to or caused to be subjected to this deprivation by a person acting under color of state law. Flagg Bros. v. Brooks, 436 U.S. 149, 155, 98 S.Ct. 1729, 1732-33, 56 L.Ed.2d 185 (1978).

Initially, the alleged events, even when viewed in the light most favorable to the Plaintiff, do not support the numerous constitutional violations alleged by the Plaintiff. The arresting officers' act of taking the Plaintiff into custody based upon the capias was constitutionally sound. An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment. Baker v. McCollan, 443 U.S. 137, 143–44, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979); Voyticky v. Village of Timberlake, Ohio, 412 F.3d 669, 677 (6th Cir. 2005). Furthermore, within the Sixth Circuit, there is no requirement that an arresting officer investigate claims of innocence by the arrestee when the officer is acting pursuant to a facially valid warrant. See Masters v. Crouch, 872 F.2d 1248 (6th Cir. 1989).

Additionally, the Plaintiff does not assert a cognizable claim under the Fourteenth Amendment based on allegations that he was deprived of his liberty or property without due process by his arrest and the subsequent criminal proceedings that occurred at the CJC. It is the Fourth Amendment, not the Fourteenth Amendment, that establishes the scope of procedural protections for those seized as part of the criminal justice system. See Wilson v. Morgan, 477 F.3d 326, 333

8

(6th Cir. 2007); Radvansky v. City of Olmstead Falls, 395 F.3d 291, 313 (6th Cir. 2005).[2] Finally, the Plaintiff's allegations regarding the conditions of confinement he endured while at the CJC fall far short of the type of extreme deprivations required for such a claim.[3]

When removed from all of the surplusage contained in the complaint, the Plaintiff's allegations set forth only the single constitutional claim that the capias issued against him for failure to appear was not supported by probable cause because he paid the fine for the citation before he was scheduled to appear in court. Even if the Court accepts as true for the purposes of this motion that this is a claim supported by the evidence in the record and views the entire record in the light most favorable to the Plaintiff, the Plaintiff has not shown an evidentiary basis upon which any reasonable jury could hold Defendant Metro liable under Section 1983.

In the instant action, the Plaintiff has not brought claims against the two arresting officers or against any other individual defendant and the only defendant named in this action is Metro. In Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611

---

[2] To the extent that the Plaintiff seeks to pursue a constitutional claim based on the actions of the judicial commissioner before whom he was brought on the night of his arrest, he has not clearly set out this claim or the constitutional basis for such a claim. Regardless, he has not shown that he has a cognizable claim against Metro based on the actions of the judicial commissioner.

[3] The Plaintiff was held at the CJC as a pretrial detainee. As such, his claims of unconstitutional conditions of confinement or mistreatment at the CJC fall under the scope of the Due Process Clause of the Fourteenth Amendment. City of Revere v. Massachusetts Gen. Hosp., 463 U.S. 239, 244, 103 S.Ct. 2979, 77 L.Ed.2d 605 (1983). However, the Eighth Amendment's prohibition against cruel and unusual punishment applies to pretrial detainees through the Due Process Clause of the Fourteenth Amendment. See Bell v. Wolfish, 441 U.S. 520, 535 & n.16, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979); Heflin v. Stewart Cnty., Tenn., 958 F.2d 709, 714 (6th Cir. 1992); Roberts v. City of Troy, 773 F.2d 720, 723 (6th Cir. 1985). Accordingly, his conditions of confinement claims are analyzed under Eighth Amendment standards. See Thompson v. County of Medina, 29 F.3d 238, 242 (6th Cir. 1994); Horn v. Madison Cnty. Fiscal Court, 22 F.3d 653, 660 (6th Cir. 1994); Danese v. Asman, 875 F.2d 1239, 1243 (6th Cir. 1989).

9

(1978), the Supreme Court held that municipalities are "persons" within the meaning of Section 1983, but also held that a municipality could not be held liable under Section 1983 solely because it employed a tortfeasor. Id. at 692. Thus, liability cannot be assessed against Metro under Section 1983 based upon a theory of respondeat superior merely because one or more of Metro's employees may have committed a constitutional tort. Board of County Comm'rs v. Brown, 520 U.S. 397, 117 S.Ct. 1382, 1388, 137 L.Ed.2d 626 (1997); Monell, supra; Taylor v. Michigan Dep't of Corr., 69 F.3d 76, 80-81 (6th Cir. 1995). Metro can only be found liable under Section 1983 for constitutional violations that were caused by a policy of Metro. Monell, 436 U.S. at 694. In addition to formally recognized policies, Metro may be liable if the constitutional tort occurred because of a governmental custom which, though not formally approved as a policy, is nonetheless an established usage or course of conduct. Id. at 690-91.[4]

Regardless of how the policy arises, the Plaintiff must show: (1) that a municipal policy exists, and (2) that the policy was the moving force behind the alleged constitutional violation. City of Canton, Ohio v. Harris, 489 U.S. 378, 389, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); Polk Cnty. v. Dodson, 454 U.S. 312, 326, 102 S.Ct. 445, 70 L.Ed.2d 509 (1981). There are at least four avenues a plaintiff may take to prove the existence of a municipality's illegal policy or custom. The plaintiff can look to: (1) the municipality's legislative enactments or official agency policies; (2) actions taken by officials with final decision-making authority; (3) a policy of inadequate training or supervision; or (4) a custom of tolerance or acquiescence of federal rights violations. Pembaur

---

[4] Because individual defendants are not named in the action, the Defendant's assertion of absolute or judicial immunity, see Docket Entry No. 55, at 7-9, is misplaced. Such a defense only shields the individual defendant from liability and does not insulate the underlying act at issue from being deemed unconstitutional.

10

v. City of Cincinnati, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986); Monell, 436 U.S. at 694; Thomas v. City of Chattanooga, 398 F.3d 426, 429 (6th Cir. 2005). In the instant action, the Plaintiff relies on the third and fourth of these avenues in his quest to show the liability of Metro.

Any plaintiff pursuing a Monell claim bears a heavy burden in establishing municipal liability. See Thomas, 398 F.3d at 433. The claims raised by the Plaintiff in this case simply suffer from a fundamental lack of evidentiary proof.

First and foremost, much of the evidence presented by the Plaintiff is not admissible evidence. The various newspaper articles submitted by the Plaintiff are not admissible evidence. Likewise, the Milligan case, in and of itself, is simply not evidence.[5] Second, the Plaintiff has submitted no evidence directly related to the issuance of the capias at issue and showing the circumstances of how it was issued. Any conclusion of why the capias was issued is pure speculation. Similarly, there is no evidence before the Court regarding what kind of procedures were used regarding the issuance of the capias and what kind of safeguards may have been in place to verify the basis for the capias. The 2010 Internal Audit Report provided by the Plaintiff is simply not relevant to the issue of the procedure used for the issuance of capiases based on a failure to appear, let alone the narrower issue of the existence of safeguards to ensure that capiases are not issued for individuals who have paid the fine for a citation prior to the court appearance date.

While the Plaintiff argues that the 2010 Internal Audit Report provides evidence of a general, overall lack of oversight regarding citations within Metro and a tolerance of possible constitutional

---

[5] Even if the Court takes judicial notice of the Milligan case, the facts of Milligan are readily distinguishable because they dealt with an individual who was mistakenly arrested based on erroneous identity information. In contrast, the instant action involves the alleged incorrect issuance of a capias to the correct person.

11

violations arising out of that lack of oversight, the report is not as far reaching as the Plaintiff believes it to be. In order to prevail on a "tolerance or acquiescence" theory, the Plaintiff must demonstrate that "there was a clear and persistent pattern of illegal activity; the [municipality] had notice of it; the [municipality] tacitly approved the unconstitutional activity such that its deliberate indifference amounts to an official policy of inaction; and this custom or policy of inaction was the moving force behind the constitutional deprivation." Aureus Holdings, Ltd. v. Detroit City, 303 Fed. Appx. 265, 270 (6th Cir. Dec. 9, 2008) (citing Thomas, 398 F.3d at 429). The Plaintiff's proof falls far short of this standard of proof. He has certainly not provided proof of a clear and persistent pattern of illegal activity regarding the issuance of capiases, let alone proof that Metro tacitly approved such activity. His failure to produce such evidence compels the Court to grant the Defendant summary judgment on this claim. Aureus Holdings, Ltd., 303 Fed. Appx. at 270–71.

Similarly, the Plaintiff has offered no evidence supporting a failure to train or supervise claim. To succeed on a failure to train or supervise claim, the Plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury. Ellis v. Cleveland Muni. Sch. Dist., 455 F.3d 690, 700 (6th Cir. 2006). In essence, the plaintiff in a failure to train case must do more than merely point to something the defendant could have done to prevent the unfortunate incident. City of Canton, Ohio v. Harris, 489 U.S. 378, 392, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). The Plaintiff in the instant case has not offered any evidence regarding the current training program in place for the issuance of capiases or any evidence supporting a conclusion that the current training program is inadequate. This failure alone requires summary judgment in favor of the Defendant. See Matthews v. Jones, 35 F.3d 1046,

1049 (6th Cir. 1994). Additionally, there is no evidence before the Court showing that Metro acted with deliberate indifference to the possibility that constitutional violations could arise because of inadequacies in the current training program. Such evidence is required for a failure to train claim under Section 1983. Given these evidentiary shortcomings, summary judgment is warranted in favor of the Defendant on any claim based on a failure to train theory.

## R E C O M M E N D A T I O N

For the reasons set out herein, the Court respectfully RECOMMENDS the motion for summary judgment (Docket Entry No. 54) of the Metropolitan Government of Nashville and Davidson County be GRANTED and that this action be DISMISSED WITH PREJUDICE.

ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice and must state with particularity the specific portions of this Report and Recommendation to which objection is made. Failure to file written objections within the specified time can be deemed a waiver of the right to appeal the District Court's Order regarding the Report and Recommendation. See Thomas v. Arn, 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); United States v. Walters, 638 F.2d 947 (6th Cir. 1981).

                                              Respectfully submitted,

                                              JULIET GRIFFIN
                                              United States Magistrate Judge